IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Allaina Williams, | ) | |
| | ) | Civil Action No. 6:13-2907-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Allaina Williams ("Williams"), brought this action pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Now before this court is the magistrate judge's Report and Recommendation ("Report"), recommending the court to affirm the Commissioner's decision. (ECF No. 26).[1] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. Williams has filed objections to the Report (ECF No. 28), and the Commissioner has responded to those objections (ECF No. 29). Accordingly, this matter is now ripe for review.

---

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

**BACKGROUND**

Williams applied for DIB and SSI in February 2011, alleging disability beginning on February 1, 2010. Williams's application was denied initially and on reconsideration. On June 15, 2012, an Administrative Law Judge ("ALJ") heard testimony from Williams, her husband, and a vocational expert. On July 17, 2012, the ALJ issued a decision denying Williams's claim.

In her decision, the ALJ found that Williams suffered from the following severe impairments: myasthenia gravis, diabetes mellitus, hypertension, obesity, and status post right eye cataract. (ECF No. 26 at 2). The ALJ found that, despite Williams's limitations, she is capable of performing past relevant work. (ECF No. 26 at 3). Williams sought review of her case by the Appeals Council, and she also submitted medical evidence that was not presented to the ALJ. The Appeals Council denied Williams's request for review, making the ALJ's decision the final decision of the Commissioner. This action followed.

**STANDARD OF REVIEW**

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

At issue in this case is a "Diabetes Mellitus Residual Functional Capacity Questionnaire" ("Questionnaire") that Dr. Katherine Lewis, a treating physician for Williams, completed on July 1, 2013. (ECF No. 12-8 at 95-100).[2] Williams believes this Questionnaire shows she suffered from additional limitations during the relevant time period—on or before July 17, 2012—and that she was disabled. (ECF Nos. 18, 28). In her objections, Williams first asserts that the magistrate judge may have conceded that the Questionnaire presented to the Appeals' Council related back to the relevant time period. (ECF No. 28 at 2). If this is true, then she claims the case must be remanded to the Appeals Council because a magistrate judge cannot determine whether the Questionnaire would affect the decision of the ALJ. (ECF No. 28). She claims that in making such a determination, the magistrate judge undertook the role of the fact finder and provided a *post hoc* argument to uphold the ALJ decision because neither the ALJ nor the Appeals Council examined the new evidence. (ECF No. 28 at 3-6).

The Commissioner asserts that the magistrate judge did not concede that the new evidence relates back to a period on or before the ALJ's decision. (ECF No. 29 at 1). The

---

[2] On February 13, 2013, Dr. David Stickler completed a "Physical Residual Functional Capacity Questionnaire" for Williams. (ECF 12-8 at 90-94). However, Williams has only argued that Dr. Lewis's Questionnaire should lead to her case being remanded. (ECF Nos. 18, 28). Therefore, the court will not examine that evidence.

Commissioner claims that the Questionnaire does not relate back. The Commissioner further argues that even if it is new and material evidence, a magistrate judge can consider whether it impugns the ALJ's decision. (ECF No. 29 at 2-3). The Commissioner contends that the ALJ's decision is supported by substantial evidence, and that the Questionnaire does not impact that decision. (ECF No. 29 at 3).

As an initial point, the court finds that the magistrate judge did not concede that the Questionnaire related back to the relevant time period. The magistrate judge stated:

> There is no indication by Dr. Lewis that her assessment of the plaintiff's functioning pertains to the period on or before the date of the ALJ's decision; rather it appears to be a current assessment of the plaintiff's condition in July 2013, nearly a year after the ALJ's July 17, 2012, decision.

(ECF No. 26 at 15). The rest of the magistrate judge's discussion is based on the *assumption* that the Questionnaire was new, material, and related back to the relevant time period. *See* (ECF No. 26 at 15-16) ("However, as argued by the Commissioner, even if this court was to find that Dr. Lewis' opinion does relate back to the relevant period in this case, the opinion still does not 'impugn the integrity of the ALJ's decision.'" (quoting *Meyer v. Colvin*, 754 F.3d 251, 257 (4th Cir. 2014))). Because Williams did not specifically object to the magistrate judge's finding that the evidence submitted to the Appeals' Council failed to relate back to the relevant time period, the court need not address it. *See United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007) ("[A] party . . . waives a right to appellate review of particular issues by failing to file timely objections specifically directed to those issues."). Since Williams has the burden to prove that the new evidence was (1) new, (2) material, and (3) relates to the period on or before the date of the ALJ's decision, *Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991), the court affirms the decision of the ALJ.

In any event, had Williams specifically objected to the magistrate judge's ruling that the Questionnaire did not relate back to the relevant time period, the court would have still affirmed the decision of the ALJ. Dr. Lewis completed the Questionnaire in July 2013. The ALJ rendered her decision in July 2012, about a year before the Questionnaire. Nothing in the Questionnaire indicates that Dr. Lewis's opinion of the condition of Williams in July 2013 referred to her condition in July 2012. *See* (ECF No. 12-8 at 95-100); *see also Wilkins*, 953 F.2d at 94-95 (the treating psychiatrist's letter to the Appeals Council stated it related back).

The case of *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005) (per curiam) is illustrative of the issues in this case. In *Barnhart*, the claimant submitted a "Physical Capacities Questionnaire and Assessment" completed by her primary treating physician six days after the hearing. *Id.* at 655. The ALJ allowed the assessment into evidence, but discredited it due to conflicting medical evidence. *Id.* The ALJ subsequently denied her claim of disability. *Id.* at 653-54. On appeal, the claimant argued that the ALJ failed to give proper weight to the assessment. *Id.* at 654. The Fourth Circuit, although addressing claimant's argument in a footnote, affirmed the decision on other grounds, specifically, that the assessment did not relate back to the claimant's date last insured. *Id.* at 655. The claimant's date last insured was June 30, 2001, and the ALJ's hearing was on March 20, 2002. *Id.* at 655-56. The Fourth Circuit stated that the "assessment was submitted almost nine months after Johnson's last insured date . . . [, and the claimant] has made no argument that the disabilities contained in the assessment existed continuously from June 30, 2001 to the present, and there is no objective medical evidence that the impairments observed by [the physician] in 2002 existed prior to June 30, 2001." *Id.* at 656.

Similar to in *Barnhart* where the physician had treated the claimant during the relevant time period, *id.* at 655, here, Dr. Lewis had treated Williams during the relevant time period. In

*Barnhart*, the claimant's physician completed the Assessment about nine months after the claimant's last date insured, *id.* at 656; while here, Dr. Lewis completed the Questionnaire about a year after the relevant time period. Also analogous to this case is how the physician in *Barnhart* had not observed any of the limitations during the relevant time period. *Id.* at 655. In this case, Dr. Lewis's treatment notes from before the ALJ decision did not indicate that Williams had the same impairments that she identified a year after the relevant time period.

Likewise, here "there is [also] no objective medical evidence that the impairments observed by [Dr. Lewis] in [July 2013] existed prior to [the ALJ's decision]." *Id.* at 656. For instance, Dr. Lewis's July 2013 opinion states that Williams's diabetes would frequently interfere with her attention and concentration. (ECF No. 12-8 at 96). A face-to-face interview with a Social Security Administration representative indicated that Williams had "no difficulty in concentrating or understanding questions." (ECF No. 12-6 at 4). A neurological examination performed on Williams indicated that her attention and her overall mental status were normal. (ECF No. 12-7 at 47). Dr. Lewis stated on November 10, 2011, that Williams's "mental status is essentially normal." (ECF No. 12-8 at 34-35). Williams, herself, indicated that she had no trouble concentrating or understanding questions. (ECF No. 12-6 at 30). She said she follows instructions well and finishes what she starts. (ECF No. 12-6 at 30). Therefore, the objective medical evidence and Williams's own statements indicate the condition observed by Dr. Lewis did not pertain to the time period at issue in this case.

Williams asserts that the evidence relates back because she has been diabetic since 1997. However, Williams's diabetes never precluded her from working, as she continued to work until 2010. During that time period, she worked as a security guard, hotel reservation agent, vacation rental agent, store cashier, store supervisor, assistant store manager, and a waitress. (ECF No. 26

at 19). She has not contended that her diabetes worsened, causing some change in her ability to perform these jobs. Therefore, the court finds this argument without merit.

In sum, because Dr. Lewis had been treating Williams during the relevant time period and never indicated these additional limitations, nor did the Questionnaire state that she was referring to an earlier time period, it is clear that these impairments did not exist prior to the decision of the ALJ.

Even if the court was to assume that the Questionnaire is new and relates back, the court would still affirm the decision of the ALJ. The court finds Williams's objections about the magistrate judge determining whether the new evidence impugns the ALJ's decision unpersuasive. (ECF No. 28 at 2-4). In *Meyer v. Colvin*, 754 F.3d 251 (4th Cir. 2014), the Fourth Circuit examined whether the Commissioner's position in a previous case was substantially justified for purposes of attorney's fees under the Equal Access to Justice Act. *Id.* at 252-53. In the companion case, at the district court level, the Commissioner asserted that evidence submitted to the Appeals Council was not "new and material." *Id.* at 257. On appeal, however, the Commissioner conceded that it was new and material but that substantial evidence still supported the ALJ's decision. *Id.* The Fourth Circuit stated that "it sufficed for the Commissioner simply to show that the letter, though material to Meyer's application, did not impugn the integrity of the Commissioner's decision." *Id.* The Fourth Circuit found that arguing that the "new information was not significant enough to require reversal of the Commissioner's decision" was a stronger argument than asserting that the letter Meyer submitted to the Appeals Council was not new and material. Accordingly, utilizing the analysis in *Meyer v. Colvin*, a magistrate court and this court can examine whether Dr. Lewis's opinion would impugn the decision of the ALJ.

The ALJ's RFC restrictions are consistent with, and sometimes more restrictive than, the limitations found in Dr. Lewis's opinion. Dr. Lewis indicated that Williams could stand or walk for four hours and sit for six hours a work day. (ECF No. 12-8 at 97). The ALJ's restrictions provided that Williams could stand or walk for only two hours and sit for six hours in a work day. (ECF No. 12-2 at 17). Dr. Lewis stated that Williams could occasionally lift and carry 10 pounds and frequently lift and carry 5 pounds. (ECF No. 12-8 at 98). The ALJ's limitations were exactly the same. (ECF No. 12-2 at 17). Dr. Lewis provided that Williams would need to be absent from work at least one day per month, while the vocational expert testified that Williams having to take one to two days off from work a month would not affect her ability to maintain employment. (ECF No. 12-2 at 52). Therefore, Dr. Lewis's opinion would not "impugn" the ALJ's decision. *See Meyer*, 754 F.3d at 257.

Williams asserts that Dr. Lewis provided for additional limitations. (ECF No. 28 at 4-5). She states that Dr. Lewis's opinion that she needs to take unscheduled breaks and that she has to keep her legs elevated when sitting should result in remand. (ECF No. 28 at 4-5). The magistrate judge found that these "additional limitations" did not impugn the ALJ decision. Williams first objects to the magistrate judge's statement that it is unclear that breaks to monitor and correct her blood sugar levels would need to be unscheduled. (ECF No. 28 at 4). She argues that the opinion that Dr. Lewis answered asked "will your patient sometimes need to take unscheduled breaks during an 8-hour working day." (ECF No. 12-8 at 97). Williams takes the statement by the magistrate judge in isolation. Dr. Lewis stated that Williams would need to take two to three "unscheduled breaks" a day to monitor and correct her blood sugar levels. (ECF No. 12-8 at 97). As the magistrate judge stated, there is no indication that the breaks would actually need to be "unscheduled," as the question did not provide Dr. Lewis with an opportunity

to state whether Williams could check her blood sugar levels on scheduled breaks. (ECF No. 26 at 19). She may be able to monitor and correct her blood sugar levels during scheduled breaks or typical unscheduled breaks built in to the workday, i.e. bathroom breaks.

Williams then objects to the magistrate judge's finding that the recommendation in the Questionnaire that Williams needs to elevate her legs while working is not inconsistent with a position as a reservation clerk. (ECF No. 28 at 5). The court agrees with the magistrate judge because there is no indication that the finding is inconsistent with the job as a reservation clerk. *See Celebrezze*, 331 F.2d at 545 (claimant bears the burden of proof).

Williams's final objection concerns the magistrate judge's determination that the ALJ's RFC satisfactorily accounted for Williams's vision problems. (ECF No. 28 at 5). Williams's once again fails to indicate how diplopia with lateral gaze and a mild degree of lid ptosis and some limitations in extraocular movements would impact her ability to be a reservation clerk. *See* (ECF No. 28 at 5-6); *see also id.* In any event, the court agrees with the magistrate judge that the ALJ properly took into account Williams's prior history and her complaints, and that the limitations in the RFC were sufficient.

## CONCLUSION

After carefully reviewing the record, the court finds that the ALJ, in reviewing the medical history and subjective testimony, conducted a thorough and detailed review of Williams's impairments, arguments, and functional capacity. Likewise, the magistrate judge considered each of Williams's arguments and properly addressed each in turn, finding them without merit. Having conducted the required de novo review of the issues to which Williams has objected, the court finds no basis for disturbing the Report. Accordingly, the court adopts

the Report and its recommended disposition. Therefore, for the reasons set out above and in the Report, the Commissioner's final decision is **AFFIRMED.**

    **IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

Anderson, South Carolina
February 12, 2015